**IN THE UNITED STATES DISCTIRCT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE LUIS REYES AYALA and CHIARELIS RIVAS TORRES<br><br>**Plaintiffs**<br><br>**v.**<br><br>SUNSTRONG MANAGEMENT LLC; TRANSUNION, LLC; INSURANCE COMPANIES ABC; JOHN DOE AND JANE DOE<br><br>**Defendants** | CASE NO.:<br><br>**RE:**<br>WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT; FAIR DEBT COLLECTION PRACTICES ACT; THE DISCHARGE INJUNCTION; ACTUAL AND PUNITIVE DAMAGES |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, **JOSE LUIS REYES AYALA** and **CHIARELIS RIVAS TORRES**, and the Conjugal Partnership constituted between them (hereinafter, collectively referred to as, "Plaintiffs"), through the undersigned counsels, and before this Honorable Court respectfully **STATE**, **ALLEGE**, and **PRAY** as **FOLLOWS**:

### I.  INTRODUCTION

1.      This is an action for damages and injunctive relief arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and for willful violations of the discharge injunction under 11 U.S.C. § 524(a)(2). This action stems from Defendants' unlawful efforts to collect and report a debt in direct contravention of a confirmed Chapter 11 Plan of Reorganization and the binding effects thereof.

1

**2.** This case arises from Defendants' unlawful conduct in attempting to collect and report a consumer debt that was subject to a Chapter 11 bankruptcy proceeding and a confirmed plan of reorganization, in direct contravention of federal law.

**3.** Notwithstanding their knowledge of the bankruptcy case and the binding effect of the confirmed plan, Defendants engaged in improper collection efforts and furnished materially inaccurate information to consumer reporting agencies regarding the status, amount, and legal enforceability of the alleged debt.

**4.** Defendants further failed to correct such inaccuracies after receiving notice and dispute from Plaintiffs, thereby continuing to publish false and misleading information concerning Plaintiffs' creditworthiness.

**5.** As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages, including but not limited to harm to credit reputation, emotional distress, and economic injury. Plaintiffs now seek to hold Defendants accountable for their violations of federal law and to obtain all available relief.

## II.    JURISDICTION AND VENUE

**6.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

**7.** This Court also has jurisdiction pursuant to 28 U.S.C. § 1334, as this action arises under Title 11 and involves willful violations of the discharge injunction under 11 U.S.C. § 524(a)(2).

**8.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and Plaintiffs reside in Puerto Rico, where they suffered the injuries complained of herein.

**9.** Personal jurisdiction over Defendants is proper because each Defendant conducts business in Puerto Rico and purposefully avails itself of the privilege of conducting activities within this District, including, inter alia, the collection of consumer debts and the furnishing and reporting of credit information concerning residents of Puerto Rico. Accordingly, the exercise of jurisdiction over Defendants comports with due process.

### III.    THE PARTIES

**10.** Plaintiffs, **Jose Luis Reyes Ayala** ("Mr. Reyes") and **Chiarelis Rivas Torres** ("Mrs. Rivas") are citizens of Bo Caguitas Centro, Carr 156 KM 53.6, Aguas Buenas, Puerto Rico 00703 having both standing to appear as "Plaintiffs".

**11.** Defendant **SunStrong Management LLC** ("SunStrong Management") is a foreign for-profit limited liability company organized under the laws of the State of Delaware, with its principal office located at 9229 Waterford Centre Blvd., Suite 200, Austin, Texas 78758. SunStrong Management is authorized to conduct business in Puerto Rico and maintains a registered address in this District at A4 Reparto Mendoza, Humacao, Puerto Rico 00791. SunStrong Management's designated resident agent in Puerto Rico is Corporation Service Company Puerto Rico, Inc., with postal and street address also at A4 Reparto Mendoza, Humacao, Puerto Rico 00791. Upon information and belief, SunStrong Management is engaged in the business of collecting consumer accounts, including accounts involving residents of Puerto Rico. As part of its regular business operations, SunStrong Management also communicates with consumers and furnishes consumer credit account data to national consumer reporting agencies, including with respect to accounts involving consumers in Puerto Rico. SunStrong Management knew or reasonably should have known that the information it furnished and the collection activities it undertook would be directed to and have consequences within this District, and would

directly affect the creditworthiness and financial standing of residents of Puerto Rico, including Plaintiffs all in violation of the FCRA, FDCPA and the discharge injunction.

12. Defendant, **TransUnion, LLC** ("TransUnion"), is one of the country's three largest consumer credit reporting agencies and is a Delaware corporation domiciled in Chicago with its headquarters and principal place of business located at 555 West Adams Street Sixth Floor Chicago, IL 60661-3614. TransUnion conducts substantial business in the Commonwealth of Puerto Rico, both directly and indirectly, through its affiliates, subsidiaries, and other related entities compiling, maintaining, and distributing credit reports concerning individuals residing in Puerto Rico; providing access to such reports to creditors, consumers, and third-party service providers in this District; and collecting fees for these products and services. Accordingly, TransUnion has purposefully availed itself of the benefits and protections of doing business in Puerto Rico. At all relevant times, TransUnion failed to conduct a reasonable investigation of Mr. Reye's dispute, contributing to the continued reporting of inaccurate and fraudulent account information in violation of the FCRA.

13. Defendants, **John Doe and Jane Doe** are fictitious names used to identify one or more individuals whose true identities are currently unknown, but who participated in the acts and omissions giving rise to the claims committed against Plaintiffs. These individuals may include, but are not limited to, agents, employees, or representatives of all the named Defendants, as well as their successors, assigns, or entities acting on their behalf.

14. Defendants, **Insurance Companies ABC**, are the insurers of all the Defendants in this Complaint. As such, they are liable for the Defendants' actions against the Plaintiffs under applicable law and are responsible for the damages and misconduct alleged in this Complaint.

## IV. THE FACTS

4

**A.      Facts Related to the Bankruptcy Proceeding:**

15.      On October 24, 2024, Plaintiffs filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Puerto Rico. *See*, Docket No. 1 in Bankruptcy Case No. 24-04556 ("Bankruptcy Case").

16.      At the time of the filing of the Bankruptcy Case, Plaintiffs were parties to an executory contract and/or financing arrangement with Sunnova Energy Corporation ("Sunnova") related to a solar energy system installed at Plaintiffs' residence.

17.      Sunnova was scheduled and treated as a creditor in Plaintiffs' bankruptcy case.

18.      Sunnova actively participated in the bankruptcy proceeding and filed Proof of Claim No. 25-1 ("POC #25-1") in the amount of $21,451.26.

19.      Through POC #25-1, Sunnova asserted that its claim was secured by the solar energy system installed at Plaintiffs' property. *See*, POC #25-1 in Bankruptcy Case.

20.      As part of the Chapter 11 process, Plaintiffs filed a Motion to Value Collateral concerning Sunnova's alleged secured claim and the value of the solar energy system. *See*, Docket No. 42 in Bankruptcy Case.

21.      In said Motion to Value Collateral, Plaintiffs asserted that the value of Sunnova's collateral, if any, was $5,000.00. Accordingly, Plaintiffs requested that Sunnova's allowed secured claim, if any, be limited to $5,000.00, and that any remaining portion of Sunnova's claim be treated as a general unsecured deficiency claim. Based on Sunnova's filed claim amount of $21,451.26, the Motion to Value Collateral proposed that any amount exceeding the $5,000.00 collateral value be treated as an unsecured claim in the amount of $16,451.26.

22.      The proposed treatment of Sunnova's claim was then incorporated into Plaintiffs' Chapter 11 Plan of Reorganization. *See*, Docket No. 45 in Bankruptcy Case.

23.     Under the Plan, Sunnova's alleged secured claim was separately classified in Class Five (5) and treated as a secured claim in the amount of $5,000.00. The Plan further provided that any amount of Sunnova's allowed claim in excess of $5,000.00 would be treated as a Class Nine (9) general unsecured deficiency claim. Under the Plan, Class Nine general unsecured claims were to receive a distribution equal to 2% of any allowed unsecured claim. No more. Based on Sunnova's asserted claim of $21,451.26, the unsecured deficiency portion totaled $16,451.26, of which **only** approximately $329.03 (2%) was subject to payment under the Plan.

24.     Therefore, Sunnova's alleged claim was not treated under the Plan as an ongoing obligation in the full amount of $21,451.26. Rather, Sunnova's claim was modified, bifurcated, and restructured through the bankruptcy process, with the alleged secured portion limited to $5,000.00 and the remaining balance treated only as a general unsecured deficiency claim.

25.     Sunnova received notice of the Plan and its proposed treatment. Sunnova had the opportunity to object to the Plan and to the proposed treatment of its claim. Instead of objecting, Sunnova voted in favor of the Plan. *See*, Docket Nos. 94 and 95 in Bankruptcy Case.

26.      By voting in favor of the Plan, Sunnova accepted the proposed treatment of its claim, including the valuation of its alleged secured claim and the treatment of any deficiency balance as a general unsecured claim.

27.     The Bankruptcy Court thereafter confirmed Plaintiffs' Chapter 11 Plan of Reorganization. *See*, Docket No. 99 in Bankruptcy Case. Moreover, on April 29, 2025, the Bankruptcy Court issued and Order Discharging Plaintiffs' of their prepetition obligations. *See*, Docket No. 107 in Bankruptcy Case.

**28.** Upon confirmation and the Order issuing the Discharge Injunction, the Plan became binding upon Plaintiffs, Sunnova, and any successors, assigns, agents, servicers, or entities acting on behalf of or through Sunnova with respect to the subject account.

**29.** As a result of confirmation, Sunnova and any successor or servicer of the subject account were prohibited from attempting to collect the prepetition obligation in a manner inconsistent with the confirmed Plan. The confirmed Plan fixed and governed the treatment of Sunnova's claim.

**30.** Accordingly, after confirmation, no entity acting on behalf of Sunnova, or claiming through Sunnova, had the right to demand, collect, or report the alleged debt as if the full prepetition balance of $21,451.26 remained immediately due and owing.

**31.** Any attempt to collect the full prepetition balance, to report the debt as past due in the full prepetition amount, or to omit the bankruptcy treatment of the claim would be inconsistent with the confirmed Plan and the protections afforded to Plaintiffs under the Bankruptcy Code.

**32.** Notwithstanding the binding effect of the confirmed Plan, the subject account was later transferred, assigned, managed, and/or collected by SunStrong Management and/or related entities.

**33.** Consequently, any rights acquired by SunStrong Management and/or related entities were subject to the terms of the confirmed Plan, the Bankruptcy Court's orders, and the limitations imposed by the Bankruptcy Code.

**34.** Thus, SunStrong Management and any related entity claiming an interest in the account stepped into no greater rights than those held by Sunnova after confirmation of the Plan.

**35.** Consequently, SunStrong Management and any related entity were required to honor the bankruptcy treatment of the claim and were prohibited from collecting or reporting the account in a manner inconsistent with the confirmed Plan.

**B.**      **Allegations Related to SunStrong Management and TransUnion:**

36.      Plaintiffs re-allege and incorporate by reference each and every preceding allegation as if fully set forth herein.

37.      On or about January 31, 2026, Mr. Reyes received a credit notification indicating that SunStrong Management was reporting an alleged account with a balance of approximately $22,893.00 and a high balance of $23,782.00.

38.      Said reporting was materially inaccurate and misleading, as it failed to reflect the treatment of the underlying obligation in Plaintiffs' Chapter 11 case and confirmed Plan, and instead portrayed the account as an active, delinquent, and fully enforceable debt.

39.      As a direct result of such inaccurate reporting, Mr. Reyes suffered, among other damages, a reduction in his credit score of more than thirty-four (34) points.

40.      On or about February 20, 2026, Mr. Reyes obtained his TransUnion credit report, which reflected that SunStrong Management was reporting the account with a balance of $22,893.00, a past due amount of $2,123.00, and a delinquent status. The report failed to include any reference to Plaintiffs' Bankruptcy Case, the confirmed Plan, or the legal effect thereof, including the modification and discharge of the underlying obligation.

41.      Upon discovering these inaccuracies, Mr. Reyes promptly contacted SunStrong Management by telephone and informed it that the reported information was incorrect, specifically advising SunStrong Management of the existence of the Bankruptcy Case, the confirmed Plan, and the discharge and/or modification of the debt.

42.      In an effort to resolve the matter, Mr. Reyes also submitted an electronic complaint to SunStrong Management, identified as Ticket No. 1742294. On or about March 2, 2026, SunStrong

Management responded to said complaint, stating, in substance, that the account was accurately reported and directing Mr. Reyes to submit any dispute through the credit reporting agencies.

43.     Thereafter, on March 5, 2026, through counsel, Mr. Reyes submitted a formal written dispute to TransUnion via certified mail, clearly identifying the account at issue, detailing the inaccuracies in the reporting, and providing a comprehensive explanation of the Bankruptcy Case, including the treatment of the underlying obligation under the confirmed Plan.

44.     On that same date, March 5, 2026, counsel for Mr. Reyes also sent a written notice directly to SunStrong Management, placing it on formal notice of the dispute, the bankruptcy proceedings, the confirmed Plan, and the legal effect of such proceedings on the underlying debt.

45.     Both communications provided detailed and specific information sufficient to allow Defendants to identify the account, verify the Bankruptcy Case through publicly available records, and correct the inaccurate reporting.

46.     Notwithstanding this clear and direct notice, Defendants failed to conduct a reasonable investigation and failed to correct the inaccurate information being reported.

47.     On or about March 28, 2026, TransUnion issued a written response to Mr. Reyes acknowledging receipt of the dispute and providing the results of its reinvestigation.

48.     The updated credit report provided by TransUnion continued to reflect materially inaccurate information regarding the SunStrong Management account, including a balance increased to approximately $22,989.00, a high balance of $23,782.00, and a delinquent status. None of the requested corrections were made, and the report continued to omit any reference to the Bankruptcy Case, the Discharge Injunction or the confirmed Plan.

9

49. Upon information and belief, SunStrong Management continued to furnish inaccurate information to TransUnion despite having actual knowledge of the Bankruptcy Case, the confirmed Plan, and the dispute raised by Mr. Reyes.

50. Upon information and belief, TransUnion relied on information furnished by SunStrong Management in maintaining and verifying the inaccurate tradeline, and improperly accepted such information as accurate, notwithstanding the detailed dispute submitted by Mr. Reyes and/or never executed an investigation at all. The dispute included pertinent documentation from Plaintiffs' Bankruptcy Case demonstrating the treatment and legal effect of the underlying claim under the confirmed Plan. Moreover, the information provided was independently verifiable through publicly available records in the Bankruptcy Court's electronic filing system (ECF), including the case number expressly identified in the dispute. Notwithstanding the foregoing, TransUnion failed to conduct a reasonable investigation and instead continued to report the inaccurate information.

51. Defendants' conduct, individually and in concert, has resulted in the continued publication of false, misleading, and legally inaccurate information regarding Plaintiffs' alleged obligation.

52. As of the filing of this Complaint, the account continues to be reported inaccurately, causing ongoing and recurring harm to Plaintiffs, including damage to credit reputation, diminished creditworthiness, emotional distress, and economic injury.

53. Defendants acted willfully and/or negligently in failing to correct the inaccurate information after being placed on clear notice of the errors and the legal status of the account.

## V. COUNT I - WILLFUL VIOLATIONS OF THE DISCHARGE INJUNCTION (11 U.S.C. § 524(a)(2)) - SUNSTRONG MANAGEMENT

54. Plaintiffs re-allege each and every previous allegation as if fully established herein.

55. 11 U.S.C. § 524(a)(2) provides that:

10

[A discharge in a case under this title—] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

56.     Accordingly, courts in this District have concluded that the reporting of a debt as past due, delinquent, or with an outstanding balance, without disclosing its unenforceable status following bankruptcy, constitutes materially misleading and inaccurate reporting. Such conduct violates the discharge injunction, as the continued publication of such information serves no legitimate purpose other than to harass the debtor and to indirectly coerce payment of a debt that is no longer legally enforceable. Rodriguez Pantojas v. FirstBank Puerto Rico, No. CV 22-1600 (JAG), 2025 WL 2784350, at *3 (D.P.R. Sept. 30, 2025).

57.     In Taggart v. Lorenzen, the Supreme Court ruled that "a court may hold a creditor in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the creditor's conduct might be lawful under the discharge order". Taggart v. Lorenzen, 139 S. Ct. 1795 (2019).

58.     Here, at all relevant times, SunStrong Management reported the subject account to consumer reporting agencies, including TransUnion, as an active and delinquent obligation, including reporting an incorrect substantial outstanding balance, a past-due amount, and a delinquency status.

59.     Said reporting occurred after the confirmation of Plaintiffs' Chapter 11 Plan of Reorganization, which expressly modified and governed the treatment of the underlying obligation.

60.     The information reported by SunStrong Management failed to reflect the legal status of the debt following confirmation of the Plan, including the fact that the obligation was no longer enforceable in the manner or amount being reported.

**61.** By reporting the account as past due, delinquent, and with a substantially incorrect outstanding balance, SunStrong Management created the false and misleading impression that Plaintiffs remained personally liable for the full amount of the alleged debt.

**62.** Such reporting was not merely incomplete, but materially misleading, as it suggested to any user of the credit report that the debt remained legally enforceable against Plaintiffs in its original form.

**63.** Upon information and belief, SunStrong Management had actual knowledge, and at a minimum constructive knowledge, of Plaintiffs' Bankruptcy Case, the confirmed Plan, and the treatment of the underlying obligation therein. Such knowledge arose from, inter alia: (a) the prior participation of Sunnova in the bankruptcy case, including the filing of a proof of claim and acceptance of the confirmed Plan; (b) SunStrong Management's acquisition of the subject account, through which it obtained or had access to the account records and servicing file reflecting the bankruptcy proceedings; and (c) direct communications and written notice provided by Plaintiffs and their counsel, including formal dispute correspondence detailing the bankruptcy case and its legal effect.

**64.** The continued reporting of the account in this manner had the natural and foreseeable effect of pressuring Plaintiffs to pay amounts that were no longer legally owed or enforceable.

**65.** The negative credit reporting, including the reporting of past-due amounts and delinquency status, directly impacted Plaintiffs' creditworthiness and ability to obtain credit, thereby exerting coercive pressure on Plaintiffs. Moreover, after Plaintiffs formally disputed the inaccuracies and Defendants failed to correct the reporting, SunStrong Management effectively placed Plaintiffs in the untenable position of having to pay the full, inaccurately reported balance

as the only apparent means of preventing further harm to their credit, thereby improperly pressuring Plaintiffs to satisfy a debt in a manner inconsistent with the confirmed Plan.

66.     Despite being placed on clear and repeated notice of the inaccuracies and the legal status of the debt, SunStrong Management failed and refused to correct the reporting, thereby continuing the publication of false and misleading information.

67.     SunStrong Management's continued reporting of the account in this manner was intentional, reckless, and/or in willful disregard of Plaintiffs' rights under the Bankruptcy Code.

## VI.     COUNT II - WILLFUL VIOLATIONS OF FAIR CREDIT REPORTING ACT § (1681s-2(b)) – SUNSTRONG MANAGEMENT

68.     Plaintiff re-alleges and incorporates by reference each and every preceding allegation as if fully set forth herein.

69.      Defendant SunStrong Management is a furnisher of credit information to one or more consumer reporting agencies, including TransUnion, as defined by 15 U.S.C. § 1681s-2.

70.     Pursuant to 15 U.S.C. § 1681s-2(b)(1), any person or entity that furnishes information to a consumer reporting agency and is notified under 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of the information must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for

13

purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

**(i)** modify that item of information;

**(ii)** delete that item of information; or

**(iii)** permanently block the reporting of that item of information.

71. After receiving notice of Mr. Reyes' dispute through multiple channels, first directly from Plaintiff by phone on February 17, 2026, by letter on March 5, 2026, and upon information and belief and through TransUnion, SunsStrong Management failed to conduct a reasonable investigation and/or correct the materially inaccurate information being reported.

72. Despite having actual knowledge, or, at a minimum, being charged with knowledge, of the bankruptcy proceeding and the treatment of the underlying obligation, SunStrong Management failed to take any meaningful steps to investigate or remediate the inaccuracies.

73. Upon information and belief, SunStrong Management acquired and/or began collecting the subject account after Sunnova's active participation in Plaintiffs' Chapter 11 case, including the filing of its proof of claim and acceptance of the confirmed Plan. As part of such acquisition and/or servicing transfer, SunStrong Management necessarily obtained, or had access to, the account records and servicing file, which would have included the bankruptcy history, the valuation of the collateral, and the Plan treatment of the claim. Accordingly, SunStrong Management knew, or at the very least should have known, that the original prepetition obligation no longer existed in the form or amount being reported.

74. Despite having actual knowledge, or at a minimum the ability to readily verify through publicly available court records, that the original prepetition obligation no longer existed in the form or amount being reported, SunStrong Management failed to take any meaningful steps to investigate or remediate the inaccuracies.

14

**75.** Mr. Reyes, through counsel, provided detailed written notice to SunStrong Management, including a copy of the dispute submitted to TransUnion, specifically identifying the inaccuracies in the reporting and explaining the legal effect of the confirmed Chapter 11 Plan on the account.

**76.** Notwithstanding the foregoing, SunStrong Management failed to correct or update the tradeline and continued to furnish information reflecting an inflated balance exceeding $22,000, a high balance exceeding $23,000, a past-due amount, and a delinquent status, all without any reference to the bankruptcy proceeding or the treatment of the claim under the confirmed Plan.

**77.** SunStrong Management further failed to report the account in a manner consistent with its legal status, and instead continued to furnish information that falsely suggested that Plaintiffs remained personally liable for the full prepetition amount of the debt.

**78.** As a result of SunStrong Management's failure to conduct a reasonable investigation, failure to correct or delete inaccurate information, and continued furnishing of information it knew or should have known was false, SunStrong Management willfully and/or negligently violated its obligations under 15 U.S.C. § 1681s-2(b).

### VII.   COUNT III - WILLFUL VIOLATIONS OF FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681e(b) – TRANSUNION

**79.** Plaintiffs re-allege and incorporate by reference each and every preceding allegation as if fully set forth herein.

**80.** TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and is subject to the obligations imposed by 15 U.S.C. § 1681e(b).

**81.** Pursuant to 15 U.S.C. § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**82.** TransUnion failed to comply with the statutory duty imposed by 15 U.S.C. § 1681e(b) to follow reasonable procedures to assure the maximum possible accuracy of the information included in Plaintiff's consumer reports. Despite receiving notice from Plaintiff disputing SunsStrong Management entry, TransUnion continued to report demonstrably false, misleading, or unverifiable information.

**83.** Despite the statutory duty imposed pursuant to 15 U.S.C. § 1681e(b), TransUnion failed to implement or follow reasonable procedures to ensure the maximum possible accuracy of Mr. Reyes' consumer report.

**84.** On or about March 5, 2026, Mr. Reyes, through counsel, submitted a formal written dispute to TransUnion via certified mail, challenging the accuracy of the SunStrong Management account reported on Mr. Reyes' credit report.

**85.** Said dispute specifically identified the account, detailed the inaccuracies in the reported balance, past-due amount, and delinquency status, and provided a comprehensive explanation and attached documentation of Plaintiffs' Chapter 11 bankruptcy case, including the treatment of the underlying obligation under the confirmed Plan of Reorganization.

**86.** Mr. Reyes further provided documentation sufficient to allow TransUnion to verify, through publicly available records, that the original prepetition obligation had been modified, restructured, and discharged and/or otherwise governed by the confirmed Plan.

**87.** Despite receiving clear, detailed, and substantiated notice of the inaccuracies, TransUnion failed to follow reasonable procedures to ensure the accuracy of Mr. Reyes' credit report and failed to verify the underlying information.

**88.** On or about March 28, 2026, TransUnion issued a written response to Mr. Reyes acknowledging receipt of the dispute and providing the results of its reinvestigation.

**89.** As evidenced by TransUnion's response and the updated credit report provided therein, TransUnion continued to report materially inaccurate information regarding the SunStrong Management account, including an inflated balance of approximately $22,989.00, a high balance of $23,782.00, and a delinquent status. The updated report failed to include any reference to Plaintiffs' bankruptcy case, the discharged status, the confirmed Plan, or the legal effect of such proceedings on the underlying obligation.

**90.** Notwithstanding the specificity of Mr. Reyes' dispute and the availability of verifiable information, TransUnion failed to correct or delete the inaccurate tradeline and continued to publish false and misleading information to third parties.

**91.** As of the filing of this Complaint, TransUnion continues to report the disputed SunStrong Management account inaccurately, thereby perpetuating harm to Plaintiffs.

**92.** TransUnion's continued failure to follow reasonable procedures to ensure the accuracy of Plaintiffs' credit file, despite clear notice, supporting documentation, and the ability to independently verify the information, constitutes a willful and/or negligent violation of 15 U.S.C. § 1681e(b).

**VIII.    COUNT IV - WILLFUL VIOLATIONS OF
FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681i(a)) – TRANSUNION**

**93.** Plaintiffs re-allege and incorporate by reference each and every preceding allegation as if fully set forth herein.

**94.** TransUnion is a "consumer reporting agenc[y]" as defined by 15 U.S.C. § 1681a(f) and is subject to the obligations imposed by 15 U.S.C. § 1681i(a).

**95.** Pursuant to 15 U.S.C. § 1681i(a)(1)(A):

> **[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer** and the consumer notifies the agency directly. . .**the agency shall**, free of charge,

**conduct a reasonable reinvestigation** to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item. . .**before the end of the 30-day period beginning on the date on which the agency receives the notice** of the dispute from the consumer. . .

*Id.* (emphasis added).

96.    Furthermore, 15 U.S.C. § 1681i(a)(2)(A) establishes:

**Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer**. . ., **the agency shall provide notification of the dispute to any person who provided any item of information in dispute**, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*Id.* (emphasis added).

97.    Equally, 15 U.S.C. § 1681i(a)(5)(A) expresses:

If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information **is found to be inaccurate or incomplete or cannot be verified**, **the consumer reporting agency shall**—
(i) **promptly delete** that item of information from the file of the consumer, **or modify that item of information**, as appropriate, based on the results of the reinvestigation; and
(ii) **promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.**

*Id.* (emphasis added).

98.    Despite the obligations imposed under 15 U.S.C. § 1681i(a), TransUnion failed to conduct a reasonable reinvestigation of Mr. Reyes' dispute.

99.    On or about March 5, 2026, Mr. Reyes, through counsel, submitted a formal written dispute to TransUnion via certified mail, identifying material inaccuracies in the SunStrong Management tradeline reported in Mr. Reyes' credit file.

**100.** In said dispute, Mr. Reyes specifically challenged the reported balance, high balance, past-due amount, delinquency status, and the complete omission of any reference to Plaintiffs' Chapter 11 bankruptcy case, the discharge injunction and confirmed Plan of Reorganization.

**101.** Mr. Reyes provided a detailed explanation of the bankruptcy proceedings, including Sunnova's Proof of Claim, the Motion to Value Collateral, and the confirmed Plan, which modified and restructured the underlying obligation. Mr. Reyes further provided documentation sufficient to allow TransUnion to verify the accuracy of the dispute through publicly available records, including the Bankruptcy Court's electronic filing system (ECF).

**102.** Despite the specificity of the dispute and the supporting documentation provided, TransUnion failed to conduct a reasonable reinvestigation of the disputed information.

**103.** On or about March 28, 2026, TransUnion issued a written response to Mr. Reyes' dispute, stating that the disputed information had been "**VERIFIED AS ACCURATE AND UPDATED**."

**104.** As reflected in the investigation results provided by TransUnion, the SunStrong Management tradeline continued to report materially inaccurate information, including a balance of approximately $22,989.00, a high balance of $23,782.00, a past-due amount, and a delinquency status reflecting the account as more than 120 days past due.

**105.** TransUnion's conclusion that the disputed information was "verified as accurate" directly contradicted the information provided by Mr. Reyes and ignored the legal effect of the confirmed Chapter 11 Plan, which governed and limited the enforceability and reporting of the underlying obligation.

**106.** TransUnion did not provide any meaningful explanation of the scope or methodology of its reinvestigation, nor did it indicate whether it reviewed the bankruptcy records, considered the documentation provided by Mr. Reyes, or meaningfully evaluated the legal status of the account.

19

107. Instead, upon information and belief, TransUnion relied solely on information furnished by SunStrong Management in verifying the tradeline, without conducting an independent or reasonable investigation.

108. Worse still, following the dispute, the balance associated with the SunStrong Management tradeline increased, further evidencing the absence of a good faith reinvestigation and the continued dissemination of inaccurate information.

109. Notwithstanding Mr. Reyes clear, detailed, and substantiated dispute, TransUnion failed to delete, modify, or correct the inaccurate tradeline within the statutory period and continued to publish false and misleading information concerning Plaintiffs' alleged obligation.

110. As a direct result of TransUnion's unreasonable reinvestigation and continued reporting of inaccurate information, Plaintiffs have suffered ongoing and recurring damages.

111. TransUnion's failure to conduct a reasonable reinvestigation and its continued reporting of inaccurate information constitute willful and/or negligent violations of 15 U.S.C. § 1681i(a)

## IX. COUNT V - WILLFUL VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692) – SUNSTRONG MANAGEMENT

112. Plaintiffs re-allege each and every previous allegation as if fully established herein.

113. At all relevant times, Plaintiffs allegedly incurred a financial obligation arising from a solar energy system agreement originally entered into with Sunnova (hereinafter, the "Consumer Debt").

114. The Consumer Debt constitutes a "debt" as defined by 15 U.S.C. § 1692a(5), in that it arose out of a transaction primarily for personal, family, or household purposes, specifically related to a residential solar system installed at Plaintiffs' home.

115. Plaintiffs, as natural persons allegedly obligated to pay a debt, are "consumers" as defined by 15 U.S.C. § 1692a(3).

20

116. Upon information and belief, at some point after the confirmation of Plaintiffs' Bankruptcy Case, the Consumer Debt was transferred, assigned, and/or placed for collection with Defendant SunStrong Management.

117. SunStrong Management is a "debt collector" as defined by 15 U.S.C. § 1692a(6), in that it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, including debts originally owed to Sunnova or its successors.

118. SunStrong Management uses instrumentalities of interstate commerce, including but not limited to the mails, telephone communications, and electronic credit reporting systems, in the collection of consumer debts.

119. SunStrong Management's conduct, including furnishing information to consumer reporting agencies such as TransUnion, constitutes a "communication" in connection with the collection of a debt within the meaning of 15 U.S.C. § 1692a(2), as such reporting is intended to convey information regarding the Consumer Debt directly or indirectly to any person through any medium.

120. At all relevant times, the Consumer Debt had been subject to Plaintiffs' bankruptcy proceedings and was expressly modified, restructured, and governed by the confirmed Plan of Reorganization.

121. Notwithstanding the foregoing, SunStrong Management represented, directly and/or indirectly through credit reporting, that Plaintiffs owed a balance substantially in excess of the amount legally enforceable under the confirmed Plan, including reporting inflated balances, past-due amounts, and delinquency status.

122.    Such representations were false, deceptive, and misleading, as they failed to reflect the true legal status of the Consumer Debt and instead conveyed that the debt remained fully due, owing, and enforceable against Plaintiffs.

123.    Through such conduct, SunStrong Management attempted to collect the Consumer Debt using false, deceptive, and unfair means.

124.    SunStrong Management has violated multiple provisions of the FDCPA.

125.    For example, Section 1692d of the FDCPA provides as follows: *"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt..."* *See,* 15 U.S.C. § 1692d.

126.    Hence, under 15 U.S.C. § 1692d, it is unlawful for a debt collector to engage in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

127.    SunStrong Management, through its reporting to consumer reporting agencies, including TransUnion, represented that Plaintiffs owed a balance exceeding $22,000.00, with a high balance exceeding $23,000.00, and further reported the account as delinquent and past due.

128.    Because the alleged debt, as reported, did not exist in the form, character, or amount represented, having been modified and governed by Plaintiffs' confirmed Chapter 11 Plan, SunStrong Management's conduct had the natural consequence of harassing, oppressing, and abusing Plaintiffs in direct violation of 15 U.S.C. § 1692d.

129.    SunStrong Management further violated Section 1692d by continuing such reporting after being placed on notice of the inaccuracies and the legal status of the debt through Mr. Reyes dispute letter.

130.    Similarly, Section 1692e of the FDCPA, in its pertinent part, states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt…

(2) The false representation of—

(A) the character, amount, or legal status of any debt; …

(5) The threat to take any action that cannot legally be taken…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt…"

*See*, 15 U.S.C. § 1692e(2)(A), (5) and (10).

131.    It is settled law that "The FDCPA is 'a strict liability statute and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38 (2d Cir. 2018); *citing,* Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "The strict liability standard applies to §1692e claims." *See*, Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009) (*Emphasis ours*)

132.    Therefore, "[d]ebt collectors may not make false claims, period." *See*, Randolph v.IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); *see also*, Valle v. Westhill Exch., LLC, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder §1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).

133.    SunStrong Management's representation, through its credit reporting and related conduct, that Plaintiffs owed amounts exceeding $22,000.00 constituted a false representation of the character, amount, and legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A). Specifically, SunStrong Management falsely represented that Plaintiffs remained liable for the full

23

prepetition balance when, in fact, such obligation had been modified, reduced, and governed by the confirmed Chapter 11 Plan.

134. Furthermore, Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken." *See*, 15 U.S.C. § 1692e(5). SunStrong Management further violated Section 1692d by continuing such reporting after being placed on notice of the inaccuracies and the legal status of the debt through Mr. Reyes dispute letter. SunStrong Management violated 15 U.S.C. § 1692e(5) by representing, through its reporting, that the debt remained due and enforceable for the full prepetition balance, thereby implying the right to collect amounts that could not legally be collected in such form.

135. Section 1692e(10) of the FDCPA also prohibits the use of *"any false representation or deceptive means to collect or attempt to collect any debt…"* *See*, 15 U.S.C. § 1692e(10). SunStrong Management violated Section 1692e(10) by using false and misleading credit reporting to create the impression that Plaintiffs remained personally liable for the full balance, thereby attempting to induce payment.

136. Lastly, SunStrong Management violated Section 1692f of the FDCPA.

137. Section 1692f prohibits a debt collector from using *"unfair or unconscionable means to collect or attempt to collect any debt."* See, 15 U.S.C. § 1692f. SunStrong Management violated 15 U.S.C. § 1692f by attempting to collect a debt in an amount and manner not legally owed, including through the reporting of inflated balances, past-due amounts, and delinquency status inconsistent with the confirmed Plan. It is inherently unfair and unconscionable to demand payment, directly or indirectly, on a debt that is not owed in the form represented.

138. SunStrong Management's conduct placed Plaintiffs in an untenable position, forcing them to either endure continued damage to their credit or pay amounts not legally owed.

**139.**    As a result of SunStrong Management's conduct, Plaintiffs are entitled to actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## X.    DAMAGES AND PRAYER FOR RELIEF

**140.**    Plaintiff re-alleges and incorporates by reference each and every preceding allegation as if fully set forth herein.

**141.**    As a direct and proximate result of the unlawful conduct of Defendants SunStrong Management and TransUnion LLC including but not limited to their willful and/or negligent violations of the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and the discharge injunction under 11 U.S.C. § 524(a)(2), Plaintiffs have suffered actual damages, including but not limited to diminished creditworthiness, reduced access to credit, reputational harm, emotional distress, anxiety, and disruption of their financial affairs.

**142.**    Plaintiffs have incurred out-of-pocket expenses, including costs associated with postage, certified mail, document reproduction, and other communication services used to submit formal disputes and attempt to correct the inaccurate reporting.

**143.**    Plaintiffs have also expended substantial personal time and effort attempting to correct inaccurate credit information, monitoring their credit reports, communicating with Defendants, and responding to inadequate and unreasonable investigations, all of which constitute recoverable actual damages under applicable law.

**144.**    Plaintiffs have further incurred and continue to incur attorneys' fees and legal costs associated with investigating Defendants' conduct, addressing the inaccurate reporting, and prosecuting this action, all of which are recoverable pursuant to applicable federal statutes.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and award the following relief: actual damages in an amount to be determined at trial

pursuant to 15 U.S.C. §§ 1681n and 1681o, 15 U.S.C. § 1692k, and applicable provisions of the Bankruptcy Code, but not less than $50,000.00, including but not limited to out-of-pocket expenses, loss of creditworthiness, reputational harm, emotional distress, and the value of time reasonably expended; statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) and 15 U.S.C. § 1692k(a)(2); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), in an amount sufficient to punish Defendants and deter similar misconduct; an award of attorneys' fees and litigation costs pursuant to 15 U.S.C. §§ 1681n(c), 1681o(a)(2), and 1692k(a)(3); sanctions and/or contempt remedies under 11 U.S.C. § 105(a) for Defendants' willful violations of the discharge injunction under 11 U.S.C. § 524(a)(2); equitable and injunctive relief requiring Defendants to delete or correct the inaccurate tradeline, cease reporting false or misleading information, and report the account in a manner consistent with the confirmed Chapter 11 Plan; and such other and further relief as this Honorable Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of April 2026.

> **THE BATISTA LAW GROUP, PSC.**
> P.O. Box 191059
> San Juan, PR. 00919
> Telephone: (787) 620-2856
> Facsimile: (787) 777-1589
>
> */s/ Jesus E. Batista Sánchez*
> Jesus E. Batista Sánchez, Esq.
> USDC-PR No. 227014
> jeb@batistasanchez.com
>
> */s/ Carlos A. Ortiz Morales*
> Carlos A. Ortiz Morales, Esq.
> USDC-PR No. 120402
> comlaw@gmail.com

26